**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Justin Williams,**

*Plaintiff*,

**v.**

**Case No. 3:25-cv-340**
**Judge Thomas M. Rose**

**NKA Transportation, Inc., et al.,**

*Defendants*.

---

**ENTRY AND ORDER GRANTING MOTION JUDGMENT AS A MATTER OF LAW BY DEFENDANTS NKA TRANSPORTATION, INC. AND KYLE JORDAN (DOC. 9)**

---

Plaintiff Justin Williams charges Defendants NKA Transportation, Inc. and Kyle Jordan with, Violation of the Civil Rights Act of 1964, wrongful termination against Ohio public policy, and Civil Assault and Battery. (Doc. 1.) NKA Transportation and Jordan have filed a Motion Judgment as a Matter of Law. (Doc. 9.) Because Williams has not alleged that a public policy motivated his conduct, NKA Transportation's Motion Judgment as a Matter of Law (Doc. 9) will be granted. Because the motion addresses only this claim, the Court will not engage allegations supporting the other claims at this time.

## I. Background

Plaintiff Justin Williams ("Williams") was employed by Defendant NKA Transportation, Inc. as a truck driver from September 23, 2024 through May 22, 2025. (Doc. 1, PageID 2–3). In

April 2025, while operating a commercial vehicle in Kentucky on behalf of NKA Transportation, Williams was stopped by a state trooper and issued a traffic citation for operating a vehicle not properly licensed in Kentucky. (*Id.*, PageID 2–3). Williams alleges that securing proper Kentucky registration was NKA Transportation's responsibility and not his own. (*Id.*, PageID 3).

Williams reported the citation to NKA Transportation. (*Id.*). According to the Complaint, NKA Transportation informed Williams that it had contacted a Kentucky attorney who would appear on Williams's behalf, enter a guilty plea to the citation, and that NKA Transportation would pay the associated fine and court costs. (*Id.*). Williams alleges that this resolution would have resulted in the citation appearing on his personal driving record. (*Id.*).

On May 22, 2025, Williams attended a meeting with NKA Transportation representatives regarding the citation and the proposed resolution. (*Id.*). Williams objected to NKA Transportation's approach and refused to plead guilty to the citation. (*Id.*, PageID 3–4). Williams alleges his objection was based on his belief that the citation was not his fault and that pleading guilty would harm his individual driving record. (*Id.*). Williams alleges that after expressing his objection and leaving the meeting, he proceeded to NKA Transportation's Human Resources department to file a complaint regarding how the meeting was handled. (*Id.*, PageID 3).

Williams was terminated by NKA Transportation later the same day. (*Id.*). The Complaint alleges that Williams's termination was wrongful because it followed his refusal to plead guilty to the traffic citation and his objection to NKA Transportation's proposed legal strategy concerning that citation. (*Id.*, PageID 3–4). Williams characterizes this refusal and objection as conduct protected by Ohio public policy, asserting that he had a constitutional right to contest the citation and to control his own criminal defense. (*Id.*, PageID 8–9).

## II. Jurisdiction and Procedural Posture

On October 10, 2025, Williams filed suit in this Court against NKA Transportation and NKA Transportation's former Operations Manager Kyle Jordan, asserting claims of Violation of the Civil Rights Act of 1964, Violation of Ohio's Wrongful Discharge Policy Based on Public Policy, and Civil Assault and Battery. (Doc. 1). Williams' Civil Rights claim provides federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction is appropriate for the state-law claims. 28 U.S.C § 1367.

On May 4, 2026, NKA Transportation filed its Motion Judgment as a Matter of Law. (Doc. 9.) Williams has responded, (Doc. 13), and NKA Transportation has replied (Doc. 14), rendering the matter ripe for decision.

## III. Standard

Rule 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(h)(2), a motion for judgment on the pleadings is analyzed using the same standard of review as a motion to dismiss under Rule 12(b)(6). *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer. *Hunter*, 272 F. Supp. 2d at 693.

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a

"'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully). Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something

beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged).

When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Federal Rule Civil Procedure 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]…that the pleader is entitled to relief.'"). Although "the court primarily considers the allegations in the complaint, ... matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 514 (E.D. Mich. 2021).

## IV. Analysis

Williams alleges in his Complaint that he was terminated because he refused NKA Transportation's proposed strategy in relation to his Kentucky traffic citation of his pleading guilty to the offense and having NKA Transportation pay for any financial sanction the Kentucky court might impose. Williams frames this as a "deprivation" of his constitutional right to contest the criminal charges against him. However, even assuming these allegations were true, the face of the Complaint indicates Williams's primary objective in raising constitutional concerns was vindicating his own personal driving record, rather than any interest of the general public. For that reason, his claim fails as a matter of law.

"Ohio is an at-will employment state, meaning that in Ohio 'an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all.'" *Johnson v. Speedway LLC*, 3:24-cv-278, 2025 WL 268100, at *2 (S.D. Ohio Jan. 22, 2025) (quoting *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 886 (6th Cir. 2020)). This generally precludes actions for damages against employers based on employment termination. *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 956 N.E.2d 825, ¶ 11 (2011); *Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 652 N.E.2d 653 (1995); *MERS v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), paragraph one of the syllabus.

"However, if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Dohme* at ¶ 11 (citing *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus); and *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus).

> To succeed on a claim for wrongful discharge in violation of public policy, a plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 137 N.E.3d 1110, ¶ 12 (2019) (citing *Collins* at 69–70). "The clarity and jeopardy elements present questions of law, while the causation and overriding justification elements present questions of fact." *Bender v. Champlain Enters., LLC*, 797 F. App'x 1008, 1013 (6th Cir. 2020) (citing *Collins* at 69–70); *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 656 (6th Cir. 2005).

Even assuming the truth of the allegations in Williams's Complaint, Williams does not state a cognizable claim for wrongful termination in violation of Ohio public policy because his own version of events indicates that his complaints to NKA Transportation regarding the Kentucky traffic citation were motivated by his own self-interest rather than the invocation of a general public-policy interest. For that reason, Plaintiff cannot satisfy the "jeopardy" element of his Ohio tort claim.

In analyzing the jeopardy element, the Sixth Circuit has developed a three-factor framework:

> (1) Determine "what kind of conduct is necessary to further the public policy" at issue; (2) decide whether the employee's actual conduct fell within the scope of conduct protected by this policy; and (3) consider whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal.

*Himmel v. Ford Motor Co.*, 342 F.3d 593, 599 (6th Cir. 2003) (cleaned up); *see also Bender*, 797 F. App'x at 1014.

It is not required that a plaintiff "be certain that the seemingly inappropriate conduct [by the employer] is actually illegal" to state a public-policy claim. *Himmel*, 342 F.3d at 600. "Rather, an employee simply must have had a good faith belief that his complaint was valid at the time of his complaint." *Id.* (citation omitted). Additionally, the Sixth Circuit has held that a claimant must

"give the employer clear notice that the employee's complaint is connected to a governmental policy. It must be sufficiently clear from the employee's statements that he is invoking governmental policy that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint." *Jermer*, 395 F.3d at 656. "[E]mployers must receive notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy." *Id*. at 659. The burden rests on the plaintiff to establish he provided clear notice to the employer; "otherwise [his] claim fails as a matter of law." *Bender* at 1014 (citing *O'Connor v. Nationwide Children's Hosp*., 723 F. App'x 321, 323 (6th Cir. 2018)). Ohio courts agree with the Sixth Circuit's analysis of the jeopardy element in *Jermer* and subsequent decisions, noting that "the focus is on the employee's pursuit of his own self-interest rather than the interests of the public at large." *Coldly v. Fuyao Glass Am., Inc*., 191 N.E.3d 514, ¶ 60 (Ohio Ct. App. 2022) (collecting cases).

The Complaint admits that Williams's self-interest was his motivation. Williams's Complaint alleges he was called to a meeting on May 22, 2025 by NKA Transportation to discuss the Kentucky traffic citation. (Doc. No. 1, PageID 2). According to Williams, NKA Transportation told him it "had contacted a Kentucky attorney to represent him at an upcoming court hearing, where the attorney would enter a plea of guilty to the citation and NKA Transportation would pay the citation and court costs. However, the citation would be on Williams's driving record." (*Id*.). The Complaint goes on to allege that "[Williams] objected to NKA Transportation's approach at the meeting and when he concluded that NKA Transportation was not going to assist him in clearing his driving record, [Williams] left the meeting and headed directly to [NKA's] Human

Resources Department where he filed a complaint regarding the events that had taken place in said meeting." (*Id*., PageID 3).

Williams's Complaint alleges that his concern in relation to the citation was that it would be on his personal "driving record." Williams then ties his alleged complaint to NKA Transportation's Human Resources Department to NKA Transportation's alleged refusal "to assist [Williams] in clearing his driving record[.]" (*Id*.). Taking these allegations as true, "there is no indication in the record that [Williams] was concerned about danger to anyone other than himself during this course of events or that his complaint to HR was related to concern about the public at large rather than his own interests." *Coldly*, 191 N.E.3d 514 at ¶ 73; *accord Bender*, 797 F. App'x at 1014 (holding "an employee has not given clear notice that she is acting to protect public policy if her employer could reasonably see an alternative basis for her complaints"). For this reason, Williams fails to meet the jeopardy element. *Coldly* at ¶ 74; *accord Allman v. Wal-Mart, Inc*., 967 F.3d 566, 574 (6th Cir. 2020) (noting that a claimant's "personal discomfort does not satisfy the jeopardy element of his *Greeley* claim").

Because Williams's allegations do not support the jeopardy element of a termination against public policy claim, this cause of action will be dismissed.

## V. Conclusion

Because Williams has not alleged that a public policy motivated his conduct, NKA Transportation's Motion Judgment as a Matter of Law (Doc. 9) is **GRANTED**. Discovery continues on Williams' claims of Violation of the Civil Rights Act of 1964 and Civil Assault and Battery.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, October 16, 2026.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE